**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES K. BERNARD,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON CAPITAL SYSTEMS, LLC,<br><br>Defendant. | No. 25 CV 9698<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Bernard filed this lawsuit against Jefferson Capital Systems, LLC, alleging violations of the Fair Credit Reporting Act and Fair Debt Collection Practices Act. Defendant moves to dismiss for lack of subject matter jurisdiction. For the reasons discussed below, the motion is granted.

## I. Legal Standards

Federal Rule of Civil Procedure 12(b)(1) governs dismissals based on lack of subject matter jurisdiction. Article III of the Constitution confines the federal judicial power to resolving "cases" and "controversies." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A case or controversy exists only where the plaintiff has a person stake in the case (i.e., standing). *Id.* To satisfy standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). As the party invoking federal jurisdiction, plaintiff bears the

burden of establishing standing. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024). When considering a factual challenge to jurisdiction, courts may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (citation omitted). Plaintiff bears the burden of coming forward with competent proof that standing exists. *Id.*

## II. Background

Around January 2025, defendant Jefferson Capital Systems, LLC, began reporting a purported debt on plaintiff James Bernard's credit reports. [6] ¶ 8.[1] Bernard then sent Jefferson Capital a written debt-validation request, disputing the debt and demanding that defendant cease further communication. [6] ¶ 9. Over the course of eight days in February 2025, defendant (through its agent) sent Bernard three debt-collection messages in an attempt to induce payment. [6] ¶ 10. Jefferson Capital also failed to conduct a reasonable investigation into Bernard's dispute before continuing to report the debt. [6] ¶ 11.

As a direct result of defendant's conduct, plaintiff alleges he suffered four distinct harms: (1) a 35-point reduction in his Experian credit score (i.e., diminished creditworthiness); (2) loss of favorable credit terms and increased perceived risk to

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number.

lenders; (3) emotional distress, humiliation, and frustration; and (4) loss of time and resources. [6] ¶ 13.

Bernard brings claims against Jefferson Capital under the Fair Credit Reporting Act and the Fair Debt Collection Practices Acts. First, he claims that defendant, as a furnisher of credit information, failed to conduct a reasonable investigation after receiving plaintiff's dispute. [6] ¶ 14. Second, plaintiff claims that defendant, through its agent, contacted him several times after receiving his cease-and-desist request. [6] ¶ 16. Jefferson Capital moves to dismiss both counts.

## III. Analysis

Defendant argues that Bernard has failed to satisfy the injury-in-fact requirement of Article III and that his claims must therefore be dismissed for lack of subject matter jurisdiction. [25] at 9.

In his first amended complaint, Bernard alleges that he suffered concrete and particularized harm in the form of a reduction in his credit score, loss of favorable credit terms, emotional distress, and loss of time and resources. [6] at 2–3. In his deposition, however, plaintiff confirmed that he was not alleging that he suffered "any kind of credit injury or lost income, increased interest rates or other economic losses." [25-1] at 55:16–20. Any alleged economic injury cannot therefore be the basis of plaintiff's injury.

What's left are plaintiff's emotional-distress and lost-time theories of injury in fact. *See* [109] at 54:15–20 (agreeing that damages were limited to emotional distress and lost time). Emotional distress, humiliation, and frustration do not constitute

concrete injury following an FDCPA violation. *See Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021). While nonpecuniary harms, such as emotional distress, may support standing for a FCRA violation, they must be described in "reasonable detail." *Persinger v. Sw. Credit Sys.*, 20 F.4th 1184, 1194 (7th Cir. 2021). Bernard's emotional-distress allegation in his first amended complaint is no more than a conclusory statement. [6] ¶ 13. Plaintiff's deposition testimony fares no better. When asked to describe his emotional distress, he reported "just a lot of frustration and stress." [25-1] at 45:19. Plaintiff further testified that he did not have any physical symptoms and failed to articulate the manifestation of his distress beyond general claims of frustration. *See generally* [25-1]. *See also* [25-2] at 10 (failing to describe plaintiff's emotional distress in reasonable detail); [27] at 13 (same). This is not enough to confer standing.

Plaintiff's lost-time theory for standing is more detailed. His interrogatory responses specify that he drafted and sent correspondence, reviewed collection communications, organized records, and prepared for and participated in this litigation. [25-2] at 9. Bernard further alleges in his sworn declaration that "[a]ddressing these matters took time away from [his] normal daily activities and contributed to [his] distress and frustration." [27] at 13. But the case cited by plaintiff—*Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020)—does not stand for the proposition that "time and attention diverted in response to unwanted conduct may contribute to concrete injury." [27] at 7. *Bazile* asked whether a plaintiff suffered a concrete injury when she received a collection letter lacking

information about a debt amount. 983 F.3d at 279. In finding that the "nonreceipt of information … may amount to a concrete injury," the court noted that the key inquiry was determining whether the omitted information hindered a substantive interest protected by the FDCPA (i.e., whether there was ascertainable harm). *Id.* a 280.

While Bernard argues that the time spent reviewing communications and preparing responses interfered with his daily activities, he did not allege (and nothing in his deposition or discovery responses revealed) that the unwanted messages deprived him of information to which he was entitled (which was at issue in *Bazile*). Given that hiring an attorney or spending money to litigate do not constitute concrete injuries in fact, *see Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020), expending time and resources to address defendant's conduct is similarly insufficient.

Bernard also cites *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020), for the proposition that "unwanted communications may constitute concrete injury because they resemble the common law tort of intrusion upon seclusion." [27] at 4. True, in a case involving the Telephone Consumer Protection Act, the court found that "[a] few unwanted automated text messages" may pose a concrete harm that Congress has chosen to make legally cognizable in the TCPA. *Gadelhak*, 950 F.3d at 463.

But the harm recognized in *Gadelhak* is different from the unwanted communications here. In *Gadelhak*, the plaintiff received five text messages in a language he did not speak from a phone service for which he was not a customer. *Id.*

at 460. The court analogized the harm to the kind of intrusions that arise when "telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff." *Id.* at 462 (citation omitted). Here, by contrast, defendant was not a stranger to plaintiff. Bernard was aware that defendant had purchased his loans. *See* [102] at 25:6–13. Bernard also requested a debt validation from Jefferson Capital shortly before receiving the three debt-collection messages from defendant's agent. [25-1] at 33:17–34:24. The unwanted communications plaintiff complains of were specifically tailored to him. They do not constitute a concrete injury. *See Stegmeyer v. ABM Indus. Inc.*, 2026 WL 879588, at *5 (N.D. Ill. Mar. 30, 2026).

Bernard also has not shown that he took a specific act to his detriment as a direct result of defendant's communications. *See Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 335, 339 (7th Cir. 2019) (noting that a bare procedural violation is insufficient for purposes of Article III). Plaintiff does not claim, for example, that the messages caused him to pay extra money or affected his credit. *See Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 286 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020). Responding to messages and disputing the debt are not legally cognizable harms. *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022).

Finally, plaintiff argues that he has standing to pursue his FCRA claim because his "allegations concern information affecting [his] personal credit profile—a category of information historically analogous to reputational and informational

harms recognized at common law." [27] at 8. Though plaintiff's first amended complaint appears to allege a reputational injury (in the form of "diminished creditworthiness"), his deposition makes clear that he was not alleging a credit injury. [25-1] at 55:16–20. Whether such an injury is sufficiently concrete to confer standing is irrelevant here where plaintiff has confirmed that he did not suffer this type of injury.

Because I conclude that plaintiff has not satisfied the injury-in-fact requirement of Article III standing, I do not reach defendant's traceability argument.

## IV. Conclusion

Defendant's motion to dismiss, [25], is granted. The case is dismissed without prejudice.[2] Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: September 23, 2026

[2] *See Flynn v. FCA US LLC*, 39 F.4th 946, 954 (7th Cir. 2022) ("When a district court concludes that the plaintiff lacks standing—and thus that the court lacks jurisdiction—the judge may either dismiss without leave to amend or dismiss without prejudice.").